FILED
CLERK
12:45 pm, Dec 17, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MICHAEL CARTELLI,

                      Plaintiff,        **MEMORANDUM OF**
                                              **DECISION & ORDER**
      -against-              2:15-cv-6890 (ADS) (AKT)

COUNTY OF SUFFOLK, POLICE OFFICER
CHRISTOPHER RIZZI AND POLICE
OFFICER LAWRENCE SHEWARK,

                      Defendants.
-----------------------------------------------------------X

**APPEARANCES:**

**Christopher J. Cassar, P.C.**
*Attorney for the Plaintiff*
13 East Carver Street
Huntington, NY 11743
       By:    Christopher J. Cassar, Esq.

**Suffolk County Department of Law**
*Corporation Counsel for the Defendants*
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
       By:    Arlene S. Zwilling, Assistant County Attorney.

**SPATT, District Judge**:

**I.    BACKGROUND**

In December 2015, the Plaintiff brought a 42 U.S.C. § 1983 action against Suffolk County (the "County"), the United States, Suffolk County Police Officer Christopher Rizzi, and Suffolk County District Attorney's Office Investigator Lawrence Shewark (collectively, the "Defendants"). The action stems from the Plaintiff's June 2014 arrest as part of joint investigation between the Suffolk County police and the United States Department of Homeland

Security into cocaine trafficking on Long Island, and his subsequent criminal proceedings. In July 2016, the parties voluntarily dismissed the action against the United States.

Presently before the Court is the Defendants' Federal Rule of Civil Procedure ("FED. R. CIV. P.") 56 motion for summary judgment. This opinion's background section has two parts. The first part describes the cocaine trafficking investigation; the Plaintiff's arrest; and his criminal proceedings. The second part summarizes the present action. In the discussion section, the Court analyzes the Defendants' motion. The Court grants the motion for summary judgment brought by the Defendants, dismisses the action, and closes the case.

### A. The Plaintiff's Arrest and Criminal Proceedings

The following facts are taken from the parties' FED. R. CIV. P. 56.1 statements. The Defendants allege the following about the underlying investigation that led to the Plaintiff's arrest. In 2013 and 2014, the United States Department of Homeland Security and the Suffolk County Police Department jointly investigated cocaine trafficking by Juan Funes ("Funes"), and numerous others on Long Island (the "Cocaine Investigation"). ECF 61 at 1. During this time, Funes lived at 40 Bennett Place in Amityville, New York. *Id.* Defendant Rizzi and Suffolk County Police Officer John Gang were assigned to the investigation. *Id.* Following a court-approved wiretap of Funes's phones, Rizzi and Gang heard Funes and the Plaintiff making appointments for the Plaintiff to come to Funes's home to purchase cocaine. *Id.* at 2. They also observed, on surveillance cameras placed on utility poles outside of Funes's home, multiple instances in which the Plaintiff would arrive at Funes's home and remain there only briefly. *Id.*

The parties agree that during the Cocaine Investigation, the Plaintiff drove a 2004 yellow Dodge Ram pickup truck, with the license plate AUL1158, which was registered in his name (the "Pickup Truck"). The Defendants allege that on December 12, 2013, March 7, 2014, and April

3, 2014, the Plaintiff drove in the Pickup Truck to Funes's home and purchased over the course of those visits more than one gram of cocaine. ECF 61 at 2–3.

On June 17, 2014, the Defendants allege that more than 20 people were arrested as part of the Cocaine Investigation, including Funes and the Plaintiff. *Id.* at 3. The parties agree that the Plaintiff faced a charge for second-degree conspiracy, under New York Penal Law ("NYPL") § 105.15, based on his alleged agreement with one or more persons to engage in the sale of cocaine. The Defendants further allege that Funes was convicted of operating as a major trafficker, under NYPL § 220.77. *Id.*

As to the Plaintiff's arrest itself, the parties agree that the police did not use force on him; that he was not injured; and, that the police impounded the Pickup Truck, although the Plaintiff disputes whether the police impounded the vehicle in order to use it against him in his pending criminal proceeding. ECF 61-16 at 4. The parties also agree that the Plaintiff did not request a hearing concerning the Pickup Truck's impoundment; that the Suffolk County District Attorney's Office did not seek forfeiture of the Pickup Truck; and, that the Pickup Truck was returned to the Plaintiff on December 16, 2014.

In addition, the parties agree that the Plaintiff was never convicted of second-degree conspiracy. The charge was disposed of through an adjournment in contemplation of dismissal pursuant to NYPL § 170.55.

**B. The Present Action**

In December 2015, the Plaintiff brought the present action, raising against all Defendants claims for excessive force; abuse of process; false arrest; malicious prosecution; failure to intervene; and, the unlawful seizure of the Pickup Truck. ECF 1 at 5–16. He also raised the failure to intervene claim under 42 U.S.C. §§ 1981 and 1986. *Id.* at 13. He filed a municipal

liability claim against the County under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and a 42 U.S.C. § 1985 conspiracy claim against all the Defendants. *Id.* at 17–21.

In April 2016, the Defendant United States moved, under FED. R. CIV. P. 12(b)(1) and 12(b)(6), to dismiss the complaint. ECF 15, 16. In July 2016, the parties stipulated under FED. R. CIV. P. 41(a)(1)(ii) to dismiss the Defendant United States from the action, and the Court approved the stipulation. ECF 26, 27. The remaining parties later voluntarily dismissed the Plaintiff's claims for malicious prosecution and conspiracy. ECF 31.

The Defendants now move under FED. R. CIV. P. 56 for summary judgment and to dismiss the complaint in its entirety, and that motion is presently before the Court. ECF 64.

## II. DISCUSSION

At this stage of the litigation, the Plaintiff has the following claims remaining: excessive force; abuse of process; false arrest; failure to intervene; unreasonable seizure of a vehicle; and municipal liability. In this discussion section, the Court first provides the standard for summary judgment, and then addresses the Defendants' arguments as to each of the Plaintiff's claims in turn, including the Defendants' contention that even if they are not entitled to summary judgment as to the false arrest and abuse of process claims, that they should receive qualified immunity as to those claims. In brief, the Court grants the Defendants' summary judgment motion, dismisses the action, and closes the case.

### A. Legal Standard

FED. R. CIV. P. 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F. 3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. Excessive Force

### 1. Legal Standard

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). A police officer's use of force is excessive in violation of the Fourth Amendment "if it is

objectively unreasonable 'in light of the facts and circumstances confronting [him] without regard to [his] underlying intent or motivation.'" *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). In this regard, although "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, [] it does not give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000). Rather, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id.* at 166. However, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Graham*, 490 U.S. at 397, 109 S. Ct. 1865).

Officers may use reasonable force to effect an arrest. *See, e.g.*, *Kalfus v. New York & Presbyterian Hosp.*, 476 F. App'x 877, 881 (2d Cir. 2012) (Summary Order) (officers' actions were reasonable where "officers turned Kalfus onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling on his upper arms, sweatshirt, and waist."). "Because the Fourth Amendment test of reasonableness is one of objective reasonableness, the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (citations and internal quotation marks and brackets omitted); *see also Brown v. City of N.Y.*, 798 F.3d 94, 100 (2d Cir. 2015).

In deciding whether an officer used excessive force, courts consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to

6

the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396, 109 S. Ct. 1865; *Jones*, 465 F.3d at 61); *See also Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003) (internal quotation marks omitted). In judging an officer's actions, a court must not substitute its own viewpoint. Rather, courts "must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Jones*, 465 F. 3d at 61 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. 1865).

At the summary judgment stage, because of the "fact-specific nature" of the objective reasonableness inquiry, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F. 3d 113, 123 (2d Cir. 2004). Thus, to prevail on a motion for summary judgment, the evidence must show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995).

2. **Application to the Facts of This Case**

The Defendants argue that the Court should dismiss the excessive force claim because the Plaintiff admitted at his deposition that the police used no force against him and did not injure him. ECF 64-1 at 8. They further contend that admissions made during a deposition are binding, and that they preclude any § 1983 claim for excessive force. *Id.*

7

In opposition, the Plaintiff argues that the police did employ excessive force because they handcuffed him, despite his not resisting arrest. ECF 66 at 16. He further alleges that the handcuffs were unreasonably too tight, and that the police ignored his protests about the tightness of the handcuffs. *Id.* at 16–17. In reply, the Defendants reiterate their argument that the Plaintiff's admissions negate his excessive force claim. ECF 67 at 2. They add that in the Plaintiff's deposition, he testified that he did not experience any type of discomfort from the handcuffs and that he did not ask for the police to loosen his handcuffs. *Id.* They assert that these admissions "render him unable to satisfy" the standard for an excessive force claim based on handcuffing. *Id.* at 2–4. The Court agrees.

"[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes .v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). The Second Circuit has ruled that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (internal quotation marks omitted). Accordingly, "'factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial.'" *Brandon v. Kinter*, 938 F.3d 21, 33 n.9 (2d Cir. 2019) (quoting *Hayes*, 84 F.3d at 619).

In his deposition, the Plaintiff testified that the following occurred during his arrest by the Defendants. He was in his kitchen making a cup of coffee when he heard a knock on his front door. ECF 61-11 at 3. He opened the door and saw five officers. *Id.* at 3–4. One of the officers said "'You're under arrest for conspiracy, you're coming with us.'" *Id.* at 4. Defendant Shewark

8

handcuffed him, placing his hands behind his back, and then walked him into a police car. *Id.* at 10, 14. During this time, the Plaintiff was not in physical pain. *Id.* at 14. After getting into the car, the police drove him to a police precinct, where the police removed his handcuffs and then cuffed one of his hands to a set of handcuffs on a table. ECF 61-12 at 1. Again, he was not injured when he was handcuffed the second time. *Id.* At no point did the police injure him during his arrest. *Id.* at 1–2.

The Court awards summary judgment to the Defendants on the excessive force claim. The Plaintiff bases this claim on his handcuffs being too tight; however, this allegation departs from his deposition testimony as to his arrest and handcuffing. Courts in this Circuit have declined to credit such departures. *See Kendall v. Cuomo*, No. 12-CV-3438, 2017 WL 4162338, at *5 (S.D.N.Y. Sept. 19, 2017) (discussing a case in which "the district court disregarded a paragraph in plaintiff's affirmation where plaintiff stated that the officers ignored plaintiff's pleas to loosen the excessively tight handcuffs because, when directly asked about the tightness of the handcuffs during the plaintiff's deposition, plaintiff did not state that the handcuffs were too tight or that he pleaded with the officers to loosen them") (citing *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 302 (D. Conn. 2009)).

While the Plaintiff in this case did not expressly say that he did not ask the police to loosen the handcuffs, he did testify that he was never in pain while in handcuffs. Moreover, the Plaintiff offers no explanation for his deposition testimony, in light of the handcuffs argument he now raises. The Court deems this a sufficient basis for granting summary judgment for the Defendants as to excessive force.

### C. Abuse of Process and False Arrest

#### 1. Legal Standards

The parties address these claims jointly in their motion papers, and so does the Court. When a party brings an abuse of process claim under § 1983, courts look to state law to determine that claim's elements. *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015). "In New York, a claim of malicious abuse of process lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984)); *see Dowd v. DeMarco*, 314 F. Supp. 3d 576, 585 (S.D.N.Y. 2018).

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Jenkins*, 478 F.3d at 84; *Hui Ping Wang v. United States*, No. 06-CV-3050, 2007 WL 9710550, at *5 (E.D.N.Y. Dec. 28, 2007). "'The elements of a claim for false arrest under New York law are that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Youngblood v. City of New York*, No. 15-CV-3541, 2019 WL 6216498, at *5 (S.D.N.Y. Nov. 21, 2019) (quoting *Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496 (S.D.N.Y. Mar. 31, 2019)). A court analyzes a false imprisonment claim in the same way it does a false arrest claim. *Jean v. City of New York*, 512 F. App'x 30, 31 (2d Cir. 2013)

(Summary Order); *Alexander v. City of New York*, No. 17-Civ-3170, 2019 W 5887300, at *6 (S.D.N.Y. Nov. 8, 2019).

Probable cause is a "complete defense to a constitutional claim of false arrest." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citations omitted). As to abuse of process, "[t]here has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York Law." *Mangino*, 808 F.3d at 958 (declining to resolve the question).

After *Mangino*, courts have ruled that "probable cause will defeat an abuse of process claim under at least some circumstances." *Tuccillo v. Cty. of Nassau*, 723 F. App'x 81, 82 (2d Cir. 2018) (Summary Order) (citing *Shields v. City of New York*, 35 N.Y.S.3d 330, 331, 141 A.D.3d 421 (1st Dep't 2016)). In *Shields*, the First Department ruled that the existence of probable cause barred an abuse of process claim where "the plaintiffs point[ed] to no evidence that defendants were motivated by some collateral objective.") 35 N.Y.S.3d at 331. At least one court in the Eastern District has noted the distinction made in *Shields*. *See Kalamaras v. Cty. of Nassau*, No. 17-CV-1068, 2019 WL 4452281, at *17 (E.D.N.Y. Sept. 16, 2019) ("[T]he existence of probable cause eviscerates Plaintiff's claimed inference of malice; and, Plaintiff has not presented any independent evidence of a collateral objective to his arrest.") (internal quotation marks omitted). However, others have ruled more broadly that probable cause constitutes a complete defense to an abuse of process claim, without commenting on the existence of a collateral objective. *See, e.g.*, *Reid v. City of New York*, No. 16-CV-4090, 2019 WL 296768, at *3 (E.D.N.Y. Jan. 23, 2019).

"Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of

11

reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004). A court may decide the probable cause question as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Bishop v. City of New York*, 518 F. App'x 55, 56 (2d Cir. 2013) (Summary Order) (quoting *Weyant*, 101 F.3d at 852); *Jenkins*, 478 F.3d at 88.

Even if a state actor deprives an individual of his constitutional rights, the doctrine of qualified immunity shields a governmental official from civil liability "if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause, and therefore the officer's qualified immunity, exists if either "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quotation marks omitted); *see also Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001). Accordingly, "arguable probable cause should not be misunderstood to mean almost probable cause . . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins*, 478 F.3d at 87.

**2. Application to the Facts of This Case**

The Defendants contend that during the Plaintiff's deposition, he admitted to having purchased cocaine from Funes three times during the Cocaine Investigation. ECF 64-1 at 5. They further argue that this constitutes an admission of guilt for the crime of criminal possession

of a controlled substance in the fifth degree, which penalizes the possession of 500 milligrams or more of cocaine. *Id.* (citing NYPL § 220.06). Accordingly, they argue, "because Cartelli admittedly possessed cocaine on three occasions while under police surveillance, there was probable cause" to arrest him. *Id.* at 7. They add that even if they did not have probable cause to arrest him for conspiracy—the crime he was charged with—they nonetheless had probable cause to arrest him, because police do not need probable cause to believe someone has committed a specific offense to justify an arrest. *Id.* at 6.

The Plaintiff argues that his admission in the deposition does not bear on the Defendants' probable cause to arrest him for acting in concert with another with intent to sell a controlled substance. ECF 66 at 14. The Plaintiff fails to allege that the Defendants had any other reason to arrest him besides his alleged involvement in the Cocaine Investigation. In reply, the Defendants reiterate their argument that if the police had probable cause to arrest the Plaintiff for any crime, his false arrest and malicious prosecution claims must fail. ECF 67 at 1–2. The Court agrees.

A claim for false arrest "turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); *Noel v. Cty. of Nassau*, No. 11-CV-5370, 2015 WL 541461, at *6 (E.D.N.Y. Feb. 7, 2015). Thus, law enforcement need not charge a party with a specific crime for a Court to determine that they had probable cause to arrest that party. *See Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (ruling that even if the police could not meet the legal requirements of the statue under which the Plaintiffs were charged, "there was probable cause to arrest them under other statutes").

Here, the Plaintiff was charged with second-degree conspiracy, and not criminal possession of a controlled substance in the fifth degree. However, the police still had probable cause to arrest him under the latter statute, because they observed the Plaintiff making brief visits to Funes's home in 2014; and the Plaintiff testified in his deposition that he had purchased cocaine from Funes three times during that period, in amounts sufficient for charging under that statute. ECF 61-7 at 1–17. Thus, the Defendants had probable cause to arrest the Plaintiff for the possession offense, even if they did not ultimately charge him with that offense. *See Jaegly*, 439 F.3d at 153.

Here, the Defendants had probable cause to arrest the Plaintiff, and the Court grants the Defendants summary judgment as to both the false imprisonment claim and the abuse of process claim. As to false arrest, the existence of probable cause, standing alone, merits summary judgment. *See Betts*, 751 F.3d at 82. As to abuse of process, the Court rules that summary judgment is proper here because of the existence of probable cause, combined with the Plaintiff's failure to allege a collateral objective for his arrest. *See Kalamaras*, 2019 WL 4452281, at *17; *see also Ross v. Port Chester Hous. Auth.*, No. 17-CV-4770, 2019 WL 4738941, at *6 (S.D.N.Y. Sept. 27, 2019) ("[T]he Plaintiff failed to allege facts suggesting defendants stopped or arrested him with any improper purpose in mind, let alone that it was to compel Plaintiff to perform any act or to obtain a collateral objective outside the legitimate ends of the process.").

In addition, the Court rules that it in the event the Defendants lacked probable cause to arrest the Plaintiff, they would still receive qualified immunity because they had arguable probable cause to effect the arrest of the Plaintiff. As part of the Cocaine Investigation, the police had observed the Plaintiff make several brief visits to the home of an individual, Funes, who was suspected of, and ultimately convicted of, cocaine trafficking, and they heard phone

conversations between Funes and the Plaintiff regarding the purchase of cocaine. These facts would allow reasonable officers to at least disagree on whether they had probable cause to arrest the Plaintiff. *See Jackson ex rel. Jackson v. Suffolk Cty.*, 87 F. Supp. 3d 386, 405 (E.D.N.Y. 2015); *Costello v. Milano*, 20 F. Supp. 3d 406, 420–21 (S.D.N.Y. 2014) ("At the very least, such facts provided arguable probable cause that Plaintiff possessed the marijuana.")

### D. Failure to Intervene

#### 1. Legal Standard

Section 1983 imposes liability not only on officers who use excessive force, but on fellow officers who fail to intervene when excessive force is used by a colleague in their presence. *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); *see Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citing *O'Neill*). However, "for a law enforcement officer to be held liable for another officer's use of excessive force, 'there must have been a realistic opportunity [for the bystander officer] to intervene to prevent the harm from occurring.'" *Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

#### 2. Application to the Facts of This Case

Here, the Court grants the Defendants' summary judgment as to the failure to intervene claim. As noted above, the Court has also awarded summary judgment as to the excessive force claim. Thus, in the absence of excessive force, the Court must dismiss the claim for failure to intervene. *See O'Neill*, 839 F.2d at 11.

### E. Unreasonable Seizure of a Vehicle

The Defendants argue that the Plaintiff has no § 1983 claim against them for the seizure of the Pickup Truck because although the police seized the vehicle without giving him a hearing, the Plaintiff had the duty to request a hearing, and he admittedly failed to do so. ECF 64-1 at 12–13. The Plaintiff argues that the Defendants violated his constitutional rights when they failed to provide him with a notice of a hearing or a prompt retention hearing after seizing his Pickup Truck. ECF 66 at 20–22. He submits in support a stipulation from a case in which he was not a party, *Morales v. Dormer*, a 2014 proceeding before United States District Judge Joseph F. Bianco, in which Suffolk County agreed to provide a prompt retention hearing upon the police's seizing a vehicle. *Id.* at 30–38. In reply, the Defendants contend that the Court should not consider the allegations about the *Morales* stipulation because the Plaintiff did not submit an affidavit as to those allegations. ECF 67 at 9.

"[U]nsworn statements are generally not considered as evidence in opposition to summary judgment." *Waddlington v. City of New York*, 971 F. Supp. 2d 286, 292 (E.D.N.Y. 2013); *see Levin v. Bank of New York Mellon*, No. 09-CV-5900, 2019 WL 564341, at *5 (S.D.N.Y Feb. 12, 2019); *Brittany Dying and Printing Corp. v. Griseto*, No. 96-Civ-9218, 2000 WL 1717554, at *3 (S.D.N.Y. Nov. 16, 2000). FED. R. CIV. P. 56 allows courts to consider assertions in an unsworn declaration or statement at the summary judgment stage, but only if the declarant affirms, under the penalty of perjury, that the contents of the unsworn statement are true. *See* FED. R. CIV. P. 56(c) & advisory committee's note (citing 28 U.S.C § 1746).

Here, the Plaintiff does not make allegations as to the *Morales* stipulation in an affidavit or declaration. He only provides them in his memorandum in opposition to the Defendants' summary judgment motion. In that memorandum, he makes no claim under penalty of perjury

that his unsworn allegations are true. Accordingly, the Court does not consider the Plaintiff's submissions at to the unlawful seizure claim, and, because the Plaintiff makes no other arguments as to that claim, the Court awards summary judgment on the claim to the Defendants. *See Levin*, 2019 WL 564341, at *5 ("The Court concludes that Tajideen's unsworn, conclusory denial does not raise a genuine dispute of material fact here."); *see also Leung v. Town of Oyster Bay*, No. 16-CV-4356, 2019 WL 5309995, at *4 (E.D.N.Y. Oct. 21, 2019) (Spatt, *J.*) ("The Morizio affidavit is fundamentally deficient because it fails to comply with the penalty-of-perjury requirement of § 1746.").

F. **Municipal Liability**

1. **Legal Standard**

A municipal body, such as a police department or county, may not be held liable under § 1983 for unconstitutional acts of its employees absent allegations that such acts are attributable to a municipal custom, policy, or practice. *Monell*, 436 U.S. at 690–94, 98 S. Ct. 2018; *see also Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (noting that a municipality "cannot properly be held liable . . . unless the injury was inflicted by [its] lawmakers or by those whose edicts or acts may fairly be said to represent official policy."), *cert. denied*, 531 U.S. 813, 121 S. Ct. 47 (2000); *Brown v. Nassau Cty.*, No. 05-CV-872, 2005 WL 1124535, at *3 (E.D.N.Y. May 9, 2005) (Spatt, *J.*).

> A Plaintiff my satisfy the "policy or custom" requirement by alleging:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438 (E.D.N.Y. 2016); *see also Davis v. City of New York*, 959 F. Supp. 2d 324, 338 (S.D.N.Y. 2013) (holding that a policy or custom may be inferred by constitutional violations that are so "persistent and widespread" that they "practically have force of law"); *Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002) ("It can be the result of an informal practice, so long as the discriminatory practices are persistent and widespread so as to constitute a custom or usage with the force of law.") (internal quotation omitted).

However, it is also well established that "a single incident involving an employee below the policymaking level will not suffice to support an inference of municipal custom or policy." *Brewster v. Nassau Cty.*, 349 F. Supp. 2d 540, 549 (E.D.N.Y. 2004) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995)); *see Nicosia v. Town of Hempstead*, No. 16-CV-1176, 2017 WL 3769246, at *3 (E.D.N.Y. Aug. 28, 2017) ("[A]llegedly discriminating against two (2) individuals for refusing to support the Republican Club is insufficient to demonstrate 'persistent and widespread' constitutional violations.").

Courts may find *Monell* liability for constitutional injuries even in the absence of individual liability. *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999). However, in order to maintain a *Monell* claim in the absence of individual defendant liability, a plaintiff must complain of injuries that "are not solely attributable to the actions of the named individual defendants." *Id.*

**2. Application to the Facts of This Case**

Neither party includes a section in their memoranda dedicated to the Plaintiff's *Monell* claim. However, the Defendants' memorandum does note that "here there was no underlying

violation, [and thus] there can be no cause of action for failure to intervene, municipal liability, or respondeat superior." ECF 64-1 at 13 (internal quotation marks omitted).

The Court grants the Defendants' summary judgment as to the *Monell* claim. While a *Monell* claim may survive the dismissal of claims against individual defendants, it may not do so where the only actors alleged to have injured the Plaintiff are individual named defendants. *See Barrett*, 194 F.3d at 349; *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001) ("[W]e have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in making the arrest did not violate the plaintiff's constitutional rights."); *Edrei v. City of New York*, No. 16-Civ-1652, 2017 WL 3822744, at *3 (S.D.N.Y. Aug. 31, 2017) ("Plaintiffs have only alleged the named Officers to have caused Plaintiff's injuries.").

## III. CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Rule 56 motion for summary judgment in its entirety, and the action is dismissed. The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED.**

　　　　/s/ Artur D. Spatt　　　　　　　　　　　　　　　December 17, 2019

　　Arthur D. Spatt, U.S.D.J.　　　　　　　　　　　　　　　　　Date